**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

ACAS, LLC,

              Plaintiff,

    v.

THE CHARTER OAK FIRE
INSURANCE COMPANY, et al.,

              Defendants.

Case No. 8:20-cv-02117-DLB

**DEFENDANTS THE CHARTER OAK FIRE INSURANCE COMPANY AND
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S MEMORANDUM
OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS COUNT III OF AMENDED
COMPLAINT**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. BACKGROUND ............................................................................................................... 2

    A.    The Prior Coverage Case ...................................................................... 2

    B.    The Allen Litigation and Settlement ..................................................... 4

    C.    The Settlement Agreement Between ACAS and Travelers ..................... 5

    D.    The Present Litigation ........................................................................... 6

III. LEGAL STANDARD ...................................................................................................... 7

IV. ARGUMENT ................................................................................................................... 8

    A.    Res Judicata Bars Count III of The First Amended Complaint. ............ 9

        1.    Count III Asserts the Same Controversy as the Prior Coverage Case. ............................................................................................. 10

        2.    ACAS Could Have Sought Post-Judgment Relief in the Prior Coverage Case. ............................................................................. 14

    B.    The Settlement Agreement Bars Count III ........................................... 19

V. CONCLUSION ................................................................................................................ 24

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Anand v. O'Sullivan*,
  168 A.3d 1030 (Md. Ct. Spec. App. 2017) .......................................................................... 10, 14

*Andrews v. Daw*,
  201 F.3d 521 (4th Cir. 2000)........................................................................................................8

*Anne Arundel Cty. Bd. of Educ. v. Norville*,
  887 A.2d 1029 (Md. 2005)..........................................................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................................................7

*Balt. Gas & Elec. Co. v. Com. Union Ins. Co.*,
  688 A.2d 496 (Md. Ct. Spec. App. 1997) ...................................................................... 11, 21, 22

*Bankers & Shippers Ins. Co. of N.Y. v. Electro Enters., Inc.*,
  415 A.2d 278 (Md. 1980) ............................................................................................................15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................................................7

*Carey v. Throwe*,
  957 F.3d 468 (4th Cir. 2020)........................................................................................................8

*Charter Oak Fire Co. v. Am. Cap. Ltd.*,
  2017 WL 3315306 (D. Md. Aug. 3, 2017).....................................................2, 3, 4, 5, 11, 16, 20

*Charter Oak Fire Ins. Co. v. Am. Cap., Ltd.*,
  760 F. App'x 224 (4th Cir. 2019) ................................................................................................4

*Chi. Title Ins. Co. v. Lumbermen's Mut. Cas. Co.*,
  707 A.2d 913 (Md. Ct. Spec. App. 1998) ..................................................................................23

*Cochran v. Griffith Energy Servs., Inc.*,
  43 A.3d 999 (Md. 2012)................................................................................................................8

*CR-RSC Tower I, LLC v. RSC Tower I, LLC*,
  32 A.3d 456 (Md. Ct. Spec. App. 2011)..................................................................................9, 16

**TABLE OF AUTHORITIES**

*(Continued)*

Page(s)

*Esslinger v. Balt. City*,
    622 A.2d 774 (Md. Ct. Spec. App. 1993) .................................................................9, 11, 15, 18

*Gertz v. Anne Arundel Cty.*,
    661 A.2d 1157 (Md. 1995) .......................................................................................................12

*Gonsalves v. Bingel*,
    5 A.3d 768 (Md. Ct. Spec. App. 2010)................................................................................ 17, 18

*Grimes v. Miller*,
    448 F. Supp. 2d 664 (D. Md. 2006).............................................................................. 10, 14, 18

*Ins. Servs. of Beaufort, Inc. v. Aetna Cas. & Sur. Co.*,
    966 F.2d 847 (4th Cir. 1992).....................................................................................................15

*J. Aron & Co., Inc. v. Serv. Transp. Co.*,
    515 F. Supp. 428 (D. Md. 1981) ..............................................................................................10

*Jarallah v. Thompson*,
    123 F. Supp. 3d 719 (D. Md. 2015)..........................................................................................19

*Laurel Sand & Gravel, Inc. v. Wilson*,
    519 F.3d 156 (4th Cir. 2008)......................................................................................................9

*Luppino v. Vigilant Ins. Co.*,
    677 A.2d 617 (Md. Ct. Spec. App. 1996) ..................................................................... 14, 16, 18

*M Consulting & Export, LLC v. Travelers Cas. Ins. Co. of Am.*,
    2 F. Supp.3d 730 (D. Md. 2014) ....................................................................................... 20, 21

*N. Assurance Co. v. EDP Floors, Inc.*,
    533 A.2d 682 (Md. 1987) .........................................................................................................20

*Nationwide Prop. & Cas. Ins. Co. v. Selective Way Ins. Co.*,
    248 A.3d 1044 (Md. 2021) .......................................................................................................17

*Nautilus Ins. Co. v. Winchester Homes, Inc.*,
    15 F.3d 371 (4th Cir. 1994), *abrogated on other grounds* ......................................................15

*O'Brien & Gere Eng'rs, Inc. v. City of Salisbury*,
    135 A.3d 473 (Md. 2016) .........................................................................................................19

*Patel v. HealthPlus, Inc.*,
    684 A.2d 904 (Md. Ct. Spec. App. 1996) .................................................................... 10, 12, 13

*Sears, Roebuck & Co. v. Reliance Ins. Co.*,
   654 F.2d 494 (7th Cir. 1981)....................................................................................................22

*Seidel v. Houston Cas. Co.*,
   375 F. Supp. 2d 211 (S.D.N.Y. 2005) .....................................................................................16

*Selective Way Ins. Co. v. Nationwide Prop. & Cas. Ins. Co.*,
   219 A.3d 20 (Md. Ct. Spec. App. 2019)............................................................................. 13, 14

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
   531 U.S. 497 (2001).....................................................................................................................9

*Smalls v. Md. State Dept. of Educ., Office of Child Care*,
   127 A.3d 610 (Md. Ct. Spec. App. 2015) ...................................................................................8

*Spirtas Co. v. Fed. Ins. Co.*,
   521 F.3d 833 (8th Cir. 2008).....................................................................................................20

*Taylor v. Sturgell*,
   553 U.S. 880 (2008).....................................................................................................................9

*Travelers Indem. Co. of Am. v. Coleman Auto. of Columbia, LLC*,
   236 F. Supp. 2d 513 (D. Md. 2002)..........................................................................................21

**STATUTES**

28 U.S.C. § 2202.................................................................................................................................15

**TREATISES**

Black's Law Dictionary (11th ed.).....................................................................................................20

## I.  INTRODUCTION

Defendants The Charter Oak Fire Insurance Company and Travelers Property Casualty Company of America (collectively, "Travelers") move to dismiss Count III of the First Amended Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6).

In a prior action, Plaintiff ACAS, LLC sought insurance coverage from Travelers in connection with litigation over contaminated heparin.  Following a bench trial, the district court concluded that Travelers owed ACAS a duty to defend the heparin litigation in its entirety and awarded damages for the defense costs ACAS presented at trial.  That decision was affirmed on appeal, and after remand, ACAS moved for attorneys' fees.  In 2019, the parties entered into a settlement agreement, which included a release requiring that ACAS would "unconditionally and irrevocably remise, release, and absolutely and forever discharge Travelers … from any and all claims for attorneys' fees, costs, expenses or other relief asserted in or arising from the Fees Motion or the Judgment."  Settlement Release and Agreement at 3, ECF No. 25.

Nearly a year after the parties executed the settlement agreement, ACAS filed this action seeking indemnity for *Allen*, a heparin case that settled in 2018.  *Allen* raised the same underlying allegations that had been litigated in the prior coverage action.  And three months into this case, ACAS demanded defense costs for *Allen* that had accrued since the judgment in the prior coverage case.

The Court granted ACAS leave to amend its complaint to include the claim for defense costs, but deferred ruling on the viability of ACAS's claim.  Travelers now moves to dismiss that claim as barred by res judicata or released by the settlement agreement.  For either or both reasons, the Court should dismiss ACAS's new claim.

1

*First*, ACAS's claim for defense costs is barred by res judicata because it could have been raised in the prior coverage case.  The court in that case determined that Travelers owed a duty to defend ACAS in the entirety of the heparin litigation—*Allen* included.  It was incumbent on ACAS at that point to seek all the remedies available to it at that time, including a declaratory judgment establishing Travelers' future obligations.  Then, with that declaration in hand, ACAS could have sought damages for all post-judgment defense costs incurred by the *Allen* litigation once it concluded.  By failing to raise a claim for such a declaration, ACAS forfeited its ability to seek post-judgment defense costs here.

*Second*, even if not barred by res judicata, Count III falls squarely within the release executed by the parties in their 2019 settlement agreement.  ACAS expressly agreed to release all claims "asserted in or arising from" the judgment in the prior coverage case.  The judgment determined Travelers' duty to defend with respect to all of the suits encompassed by the heparin litigation, necessarily including the *Allen* case.  And because ACAS's present claim for damages depends on Travelers' duty to defend—as adjudicated in the prior coverage case—the claim "arises from" the judgment, and is barred by the release.

This Court should dismiss Count III of the First Amended Complaint with prejudice under Rule 12(b)(6) for failure to plausibly state a claim against Travelers.

## II.  BACKGROUND

### A.    The Prior Coverage Case

In 2006, ACAS purchased six insurance policies from Travelers—three primary commercial general liability policies for the 2006–2007, 2007–2008, and 2008–2009 coverage years, and three commercial excess liability ("umbrella") insurance policies for those same coverage years.  *Charter Oak Fire Co. v. Am. Cap. Ltd.*, 2017 WL 3315306, at *1 (D. Md. Aug.

3, 2017) ("Op."). Though only the 2007 policies ("the Travelers Policies") are at issue here (*see* Am. Compl. ¶ 10), ACAS asserted claims under all six policies in the prior coverage case. The policies provided that Travelers is bound to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," and that Travelers has "the right and duty to defend the insured against any 'suit' seeking those damages." Op. at *7.

In early 2008, one of ACAS's portfolio companies, Scientific Protein Laboratories, LLC ("SPL"), instituted a recall of all its products that included heparin, a blood-thinning drug commonly used in surgeries. *Id.* at *2. The recall resulted from reports that heparin manufactured with SPL heparin products—later determined to be contaminated—was causing severe patient reactions, including death. *Id.* In March 2008, the first heparin lawsuits were filed against ACAS. *Id.* at *3. Ultimately, the "heparin litigation" encompassed 1,064 suits. *Id.*

ACAS notified Travelers about the heparin litigation on August 20, 2008 and requested a coverage determination on January 14, 2009. *Id.* at *3. Travelers determined that the heparin litigation fell outside the coverage of ACAS's policies because 1) the heparin litigation related to the conduct of a "non-insured joint venture" and 2) Travelers was entitled to rescission or reformation of the policies because ACAS "did not seek insurance for any subsidiaries" and "affirmatively represented ... that it did not have subsidiaries." *Id.* at *12. Travelers thus notified ACAS that it had no duty to defend, and then filed a declaratory judgment action in this court. *Id.* at *3–4. Shortly thereafter, Travelers sent ACAS a second coverage letter clarifying that the heparin litigation also fell outside of the Travelers Policies' duty to indemnify. Am. Compl. ¶ 13.

Travelers' operative complaint in the prior coverage case sought a declaratory judgment that the Travelers Policies "do not provide defense or indemnity for ... the heparin lawsuits."

3

Travelers Second Am. Compl. ¶ 160, <u>ECF No. 24-5</u>.  ACAS filed counterclaims, which—in relevant part—sought declaratory relief regarding rescission of the insurance policies and alleged breach of contract regarding the duty to defend.  *See* ACAS Third Am. Countercl. 92–97, <u>ECF No. 24-6</u>.  For the breach of contract claim, ACAS sought damages for "defense costs incurred by ACAS and/or SPL on or after Travelers' January 16, 2009 denial of coverage in *all* heparin cases that named ACAS and/or SPL, except for amounts corresponding to any time entries containing redactions or amounts corresponding to entire bills produced in redacted format."  ACAS Fifth Am. Interrog. Resp., <u>ECF No. 24-8</u> (emphasis added).

On August 3, 2017, following a six-week bench trial, the Court ruled that Travelers "owed [ACAS] a duty to defend in the heparin litigation" (Op. at *10), and had breached that duty when it sent ACAS its coverage denial letter (*id.* at *11–12).  The Court awarded damages to ACAS in the amount of $62,717,069.00.  *Id.* at *32.  It also denied claims for declaratory relief and other issues not relevant to the present case.  *Id.* at *13–14.  An amended judgment followed on August 21, 2017, in which the Court quantified the prejudgment interest award owed to ACAS.  *See* Am. J., <u>ECF No. 24-16</u>.  Travelers appealed to the Fourth Circuit, which affirmed.  *Charter Oak Fire Ins. Co. v. Am. Cap., Ltd.*, 760 F. App'x 224, 230 (4th Cir. 2019).

**B.     The *Allen* Litigation and Settlement**

On February 9, 2010, Charlisa Allen filed a complaint in the Northern District of Ohio (later transferred to the District of Arizona) as part of a multi-district litigation regarding heparin. Am. Compl. ¶ 18.  The *Allen* complaint alleged that the plaintiff's husband was administered contaminated heparin in December 2007, which led to his wrongful death in March 2008.  *Id.* ¶¶ 19–20.

During the prior coverage case, ACAS introduced evidence of the pending *Allen* case as one of the heparin litigation suits for which Travelers owed a duty to defend.  *See* Pretrial Tr. 62–63, ECF No. 24-10; Trial Tr. 69–72, ECF No. 24-11; *see also* Op. at *3 (describing the suits included in the Ohio multi-district litigation as part of the "heparin litigation").  Specifically, when describing the defense invoices it produced for 2016, ACAS stated, "Not all the [heparin litigation] cases were over, but there was one that was a case involving [ACAS] and SPL.  That's called the *Allen* case.  So the parties agreed that we would produce the documents, redacting only the items that we weren't seeking coverage for."  Pretrial Tr. 62:7–11, ECF No. 24-10.  And when ACAS produced invoices for its defense costs, it included bills for services rendered through May 2016 (*see* ACAS Trial Ex. DX2109, ECF No. 24-9), even though *Allen* was still being litigated—and thus still incurring costs—when the prior coverage case went to trial in March 2017.

In March 2018, the *Allen* parties reached an agreement-in-principle to settle, which they executed on August 15, 2018. Am. Compl. ¶¶ 23–24.

## C.     The Settlement Agreement Between ACAS and Travelers

Following the Fourth Circuit's affirmance of the judgment in the prior coverage case, ACAS moved for fees incurred in that action.  *See* Settlement Agreement at 1, ECF No. 25.  While that motion was pending, the parties entered into a settlement agreement that was signed on August 22, 2019.  *See* Settlement Agreement, ECF No. 25.  The agreement included both a settlement of the fees dispute and a broad release of both parties' claims with respect to the prior coverage case. The release provides:

> In exchange for the consideration set forth in this Agreement, upon payment of the Settlement Payment, ACAS and SPL … hereby unconditionally and irrevocably remise, release, and absolutely and forever discharge Travelers … from *any and all* claims for attorneys' fees, costs, expenses or other relief asserted in or arising from the Fees Motion or the Judgment.

*Id.* at 3 (emphasis added).  Critically, the agreement defines "Judgment" as the "Memorandum Opinion and Order" and amended judgment in the prior coverage case.  *Id.* at 1.  And the parties further agreed that they would "not bring or commence any action against any of the other Parties for any claim, action, cause of action, right, or obligation released in this Agreement."  *Id.* at 5.

Based on the broad language of the release and the explicit references to the prior coverage case, the agreement constituted a global settlement of all claims stemming from the heparin litigation.

**D.    The Present Litigation**

Plaintiff filed the initial complaint in the present action on July 20, 2020, alleging that Travelers breached its duty to indemnify Plaintiff for the *Allen* settlement.  *See* Compl. ¶¶ 2–4. Specifically, Plaintiff sought a judicial declaration that "the full amount of the *Allen* settlement is covered under the Travelers policies" as well as compensatory damages for Travelers' alleged breach of its duty to indemnify.  *Id.* at 8.

A few months later, ACAS sent a letter to Travelers, demanding payment of $3.7 million in heparin litigation defense costs incurred since March 31, 2017.  *See* ACAS Correspondence to Travelers, Oct. 23, 2020, <u>ECF No. 24-3</u>.[1]  Travelers responded to the letter on November 20, 2020, rejecting ACAS's demand for costs based, in relevant part, on the 2019 settlement and release, as well as res judicata.  *See* Travelers Correspondence to ACAS, Nov. 20, 2020, <u>ECF No. 24-3</u>.

---

[1]    An attachment to the letter included defense costs for *Allen* and another heparin case, *Dumigan. v. App Pharms, LLC* (Fla. Cir. Ct. Apr. 26, 2012) No. 05-2012-CA-038662. Like *Allen*, the *Dumigan* litigation was pending during the prior coverage case, and ACAS included its defense costs in its claim for damages.  *See* ACAS Trial Ex. DX2109, <u>ECF No. 24-9</u>; Trial Tr. 71–72, <u>ECF No. 24-11</u>.  The judgment in the prior coverage case thus necessarily included all defense costs for *Dumigan* as well.  As Count III seeks only costs for *Allen*, further discussion of *Dumigan* is omitted.

On December 7, 2020, Plaintiff filed a pre-motion letter indicating its intent to move for leave to amend its complaint. *See* Pl.'s Letter of Intent to File Mot. For Leave to Am. Compl., ECF No. 22. The letter stated that Plaintiff sought to add one new claim "aris[ing] out of Defendants' failure to cover defense costs incurred by ACAS, related to the same *Allen* case, between November 2017 and the finalization of the *Allen* settlement in 2018, and, thus, after the completion of the March 2017 trial." *Id.* The court construed this letter as a motion to amend to add a new claim (*see* ECF No. 23), and Travelers filed a letter in opposition (*see* Def.'s Letter in Opp., ECF No. 24).

The Court granted leave to amend, but stated expressly that its ruling was without prejudice to Travelers' ability to move to dismiss the new claim. *See* Order, ECF 41. Plaintiff filed the First Amended Complaint on December 3, 2021, alleging that Travelers breached "its duty to cover the defense costs incurred by ACAS in and after November 2017 which were reasonably related to the defense of the *Allen* case" and seeking compensatory damages and costs resulting from the alleged breach. Am. Compl. ¶¶ 35–43. Travelers now moves to dismiss Count III of the First Amended Complaint.

### III. LEGAL STANDARD

A claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the pleaded facts allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions or conclusory statements do not meet this standard. *Id.* To determine whether a claim should be dismissed, the court must consider the

complaint as a whole, view its factual allegations as true, and construe the factual allegations in the light most favorable to the plaintiff. *See Carey v. Throwe*, 957 F.3d 468, 474 (4th Cir. 2020).

"[A]n affirmative defense such as res judicata may be raised under Rule 12(b)(6) 'only if it clearly appears on the face of the complaint.'" *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (citation omitted). And where, as here, a motion to dismiss raises the defense of res judicata, "a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact." *Id.*

## IV.  ARGUMENT

The prior coverage case established that Travelers owed a duty to defend the heparin litigation, which encompassed the *Allen* case. After holding that Travelers breached that duty, the court awarded damages for all defense costs that ACAS proved it had incurred. ACAS had every ability to obtain in that coverage action a declaration of its right to future defense costs, but failed to do so. Having omitted this relief from the declaration ACAS sought and received in the prior coverage action, it is barred by res judicata from reopening that controversy over defense costs in this action. In any case, ACAS in its settlement agreement released "any and all claims … arising from" the judgment in the prior coverage case, which necessarily includes the defense costs ACAS asserts in Count III. For either or both reasons, Count III does not state a cognizable claim for relief, and the Court should dismiss that claim with prejudice.[2]

---

[2] If the Court concludes otherwise, Travelers must be given the right to litigate in this case whether it had a duty to defend *Allen*. Travelers cannot be saddled with the adverse coverage ruling from the prior action but denied the finality of the judgment. *See Smalls v. Md. State Dept. of Educ., Office of Child Care*, 127 A.3d 610, 613–14 (Md. Ct. Spec. App. 2015). Avoiding such an unfair result is the very purpose of res judicata. *See Cochran v. Griffith Energy Servs., Inc.*, 43 A.3d 999, 1002 (Md. 2012).

**A.     Res Judicata Bars Count III of The First Amended Complaint.**

Res judicata "bars a party from relitigating a claim that was decided or could have been decided in an original suit." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008). This doctrine of claim preclusion aims to protect litigants from "successive litigation of the very same claim, … conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

This Court applies Maryland law with respect to res judicata (*Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508–09 (2001)), which sets forth three requirements: "1) the prior suit must have resulted in a final judgment on the merits; 2) the claim involved in both actions must be substantially the same; and 3) the parties must be the same or in privity." *CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 32 A.3d 456, 468 (Md. Ct. Spec. App. 2011). As the prior coverage case ended in a final judgment and the parties are the same in both suits, the only open question is whether the claims in both actions are substantially the same.

To determine whether the claims are the same for purposes of res judicata, the test is "whether the claim presented in the new litigation 'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment.'" *Laurel Sand & Gravel*, 519 F.3d at 162 (citation omitted). The court should approach this inquiry "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Esslinger v. Balt. City*, 622 A.2d 774, 779–80 (Md. Ct. Spec. App. 1993) (Motz, J.) (citation omitted). And even "[n]ewly articulated claims based on the same [transactional] nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action." *Laurel Sand & Gravel*, 519 F.3d at 162

9

(citation omitted). Under this transactional approach, "if the two claims or theories are based on

the same set of facts and one would expect them to be tried together ordinarily, then a party must

bring them simultaneously. Legal theories may not be divided and presented in piecemeal fashion

in order to advance them in separate actions." *Anand v. O'Sullivan*, 168 A.3d 1030, 1043 (Md.

Ct. Spec. App. 2017) (quoting *Anne Arundel Cty Bd. of Educ. v. Norville*, 887 A.2d 1029, 1038

(Md. 2005)).

      Count III of the First Amended Complaint is barred by res judicata because it derives from

the same transaction as the claims that the court resolved in the prior coverage case. That case

litigated coverage for *all* the heparin litigation, including the *Allen* case. ACAS is barred from

attempting to seek additional damages based on the duty to defend the *Allen* case, when ACAS

unquestionably could have sought those damages in the prior coverage case.

      **1.**     **Count III Asserts the Same Controversy as the Prior Coverage Case.**

      Both the prior coverage case and Count III arise from the same controversy—namely

Travelers' breach of the duty to defend for the heparin litigation. The theory of liability underlying

Count III thus stems from the same set of facts and circumstances that were already addressed by

the prior coverage case. *See J. Aron & Co., Inc. v. Serv. Transp. Co.*, 515 F. Supp. 428, 448 (D.

Md. 1981) (noting that res judicata compels a litigant to assert a claim in the same suit "[w]here

multiple claims involve many of the same factual issues, or the same factual and legal issues, or

where they are offshoots of the same basic controversy between the parties").

      Courts consistently hold that claims are part of the same controversy or transaction when

the underlying facts are related in time, space, origin, and motivation. *See*, *e.g.*, *Anand*, 168 A.3d

at 1043 (claims part of same transaction where both arose from the same mortgage and lien on the

same property); *Grimes v. Miller*, 448 F. Supp. 2d 664, 669 (D. Md. 2006) (claims part of same

transaction where both arose from plaintiff's "removal from the Town Council"); *Patel v.*

*HealthPlus, Inc.*, 684 A.2d 904, 917 (Md. Ct. Spec. App. 1996) (claims part of same transaction where plaintiff in both suits "attempt[ed] to recover damages for [defendant's] alleged breach of the single contract"); *Esslinger*, 622 A.2d at 780 (claims part of same transaction where both arose from plaintiff's "attempt to place a free-standing satellite dish on his property" and the zoning board's "denial of a conditional use permit to allow the same satellite dish on the same property").

Both Count III of this action and the prior coverage case originate from Travelers' denial of ACAS's request for defense coverage with respect to the heparin litigation. The judgment in the prior coverage case applied to all 1,064 heparin suits, including the pending *Allen* litigation. *See Balt. Gas & Elec. Co. v. Com. Union Ins. Co.*, 688 A.2d 496, 505 (Md. Ct. Spec. App. 1997) ("[A]n insurer's duty to defend its insured under a liability insurance policy arises when the insured is sued on a claim that is covered, or is potentially covered, by the insurance policy."). Indeed, the court in the prior coverage case explicitly acknowledged that ACAS's duty-to-defend claim applied to the entirety of the heparin litigation (*see* Op. at *10), and the parties specifically produced evidence of the defense costs incurred by *Allen* during the proceedings (*see* Pretrial Tr. 62:7–11, ECF No. 24-10; Trial Tr. 70–72, ECF No. 24-11). Accordingly, *Allen* 1) was explicitly addressed in the prior coverage case, and 2) is part of the heparin litigation as a whole—the transaction that formed the basis of the prior coverage case.[3]

---

[3] Notably, ACAS's original demand letter stated that it sought defense costs incurred since March 31, 2017. *See* ACAS Correspondence to Travelers, ECF No. 24-3. That demand thus included defense costs that were accruing during trial in the prior coverage case and prior to the August 3, 2017 judgment. But when ACAS filed its amended complaint, it changed its demand to costs incurred since November 2017, implicitly conceding that pre-judgment defense costs are barred by res judicata. This attempt to split a single claim into pre-judgment and post-judgment costs should be rejected, as *all* heparin-related defense costs arise out of the same underlying breach of the duty to defend.

Courts regularly hold that claims arise out of the same transaction where they stem from a single breach of contract. For example, in *Patel*, a doctor sued an HMO provider to recover fees for services he had rendered to a patient. 684 A.2d at 906. Applying Maryland's transaction test, the court held that the suit was barred by res judicata based on an earlier suit in which the same doctor sued the same HMO for fees incurred by services provided to a *different* patient. *Id.* at 918. The court reasoned that "there was but one contract between the HMO … and [the doctor] in which he agreed to perform all of the services to the HMO's subscribers and to look only to [the HMO] for payment." *Id.* at 917. Accordingly, the doctor's claims for relief stemming from the breach of that contract were necessarily related in time, space, and origin. *Id.* The court also found that the doctor had the same motivation for bringing both suits—to recover damages for the HMO's "alleged breach of the single contract." *Id.* A crucial aspect of the court's analysis was that the second suit's theory of liability existed at the time that the first suit was brought. *Id.* at 916 (citing *Gertz v. Anne Arundel County*, 661 A.2d 1157, 1162 (Md. 1995), for the proposition that res judicata does not apply if "the theory of liability in the instant action did not exist when the earlier suit was litigated").

Similarly here, both Count III and the prior coverage case arise out of the same alleged breach of the same duty under the same insurance contracts between ACAS and Travelers. Though the heparin litigation encompasses over 1,000 individual cases, ACAS has only one claim for breach of the insurance policies—Travelers' refusal to cover ACAS's defense costs in all of those suits. It follows that ACAS's claims for relief stemming from that breach are related in time (the coverage period), space (they could have been litigated together), and origin (the Travelers Policies). Moreover, like the doctor in *Patel*, ACAS's motivation in bringing both suits was to recover damages for breach of the same contracts. And critically, the theory of liability (the

existence and breach of the duty to defend) underlying the current suit was available—and actually litigated—in the prior coverage case. Thus, under *Patel*'s reasoning, Count III derives from the same transaction as the claims in the prior coverage case.

Count III also raises nearly identical allegations to those adjudicated in the prior coverage case. In relevant part, Count III alleges that Travelers "owed a duty to defend the *Allen* case and, thus, a duty to fund all fees and expenses reasonably related to defense of an insured," and "[a]s a result of Travelers' breach of its duty to cover the defense costs incurred by ACAS in and after November 2017 which were reasonably related to the defense of the *Allen* case, ACAS has suffered damages." Am. Compl. ¶¶ 39, 43. Similarly, ACAS's counterclaims in the prior coverage case alleged that Travelers "owed a duty to fund the defense of one or more of the underlying heparin suits," "repudiated its duty to fund the defense of each and every heparin suit," and "[a]s a result of [Travelers'] repudiation of its duty to defend, [ACAS] … suffered damages." ACAS Third Am. Countercl. ¶¶ 262–64, ECF No. 24-6.

Count III does not assert any new claim with respect to the duty to defend. *Cf. Patel*, 684 A.2d at 917 (finding that plaintiff's motivation for bringing two suits was "identical" because both suits sought "to recover damages for … [defendant's] alleged failure to comply with [a single] contract"). Though ACAS attempts to distinguish Count III by limiting it to the period in and after November 2017, that does not transform the claim into one based on a separate transaction.[4] It is well-established that the duty to defend is breached at the time an insurer "refuses to defend a suit where a claim is potentially covered by the policy." *Selective Way Ins. Co. v. Nationwide Prop.*

---

[4] Indeed, the *Allen* docket shows continuous activity in that case from August 4, 2017 (the day after the judgment in the prior coverage case) through March 19, 2018 (the day the *Allen* court approved the settlement). *See* Docket Entries, *Allen v. Am. Cap. Ltd.*, No. 2:16-cv-02876 (D. Ariz. Aug. 29, 2016), ECF No. 132–253. ACAS's decision to assert claims for post-judgment defense costs incurred after November 2017 is thus completely arbitrary.

*& Cas. Ins. Co.*, 219 A.3d 20, 33 (Md. Ct. Spec. App. 2019); *see Luppino v. Vigilant Ins. Co.*, 677

A.2d 617, 621 (Md. Ct. Spec. App. 1996) (holding that insurer breached duty to defend "when the

company expressly declined to provide the defense"). And here, the underlying breach of the duty

to defend occurred on January 16, 2009, when Travelers denied its obligation to defend the heparin

litigation. That same breach applied to the *Allen* suit when it was filed in 2010, as Travelers had

not changed its coverage position with respect to the heparin litigation, and ACAS has never made

any additional demand for coverage. Thus, the January 16, 2009 denial of coverage is the

controversy or transaction that gave rise to the prior coverage case and that gives rise to this case.

Because they present the same factual and legal theories as the claims in the prior coverage

case, ACAS's allegations regarding Travelers' duty to defend "ar[i]se from the same nucleus of

facts and transactions that were addressed by the judgments entered in the prior case[]." *Anand*,

168 A.3d at 1043; *cf. Grimes*, 448 F. Supp. 2d at 669 n.4 (explaining that, where first suit involved

claims stemming from plaintiff's removal from town council, claims "involv[ing] events … *after*

her removal from the [c]ouncil, [] are part of the same 'claim' for res judicata purposes because

they are part of the same related series of events"). Res judicata thus applies to the claims raised

in Count III.

### 2.   ACAS Could Have Sought Post-Judgment Relief in the Prior Coverage Case.

There is no question that ACAS could have sought the relief it seeks here in the prior

coverage case. The district court in that action held that Travelers breached its duty to defend with

respect to the heparin litigation, and ACAS expressly indicated that it sought defense costs for

*Allen* as a result of that breach. Thus, any other relief available to ACAS for that breach should

have been pursued at that time. Although the precise *amount* of damages for future defense costs

could not have been calculated at the time of the judgment, ACAS could have sought a declaratory

judgment providing for future damages.  ACAS is thus barred from seeking those damages in this action.

To determine whether a claim could have been brought in a prior suit, courts consider whether "the parties ha[d] ample procedural means for fully developing the entire transaction in the one action going to the merits."  *Esslinger*, 622 A.2d at 780.  This necessarily includes the "opportunity to pursue all of one's *remedies* in that action."  *Id.* at 782.  Here, ACAS could have pursued a declaratory judgment regarding Travelers' liability for defense costs in the post-judgment period, but it failed to do so.  Such a declaratory judgment would have allowed ACAS to recover the damages it seeks here.  *See* 28 U.S.C. § 2202; *Ins. Servs. of Beaufort, Inc. v. Aetna Cas. & Sur. Co.*, 966 F.2d 847, 852 (4th Cir. 1992) ("The district court clearly had the power to hear the issue of damages after deciding the issue of liability and declaring the parties' rights in an equity action.").[5]  As such, the prior coverage case afforded ACAS the opportunity to pursue the remedies it now seeks through Count III.

Declaratory judgments can be sought to "resolve disputes over liability insurance coverage, even in advance of a judgment against the insured on the underlying claim for which coverage is sought."  *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375–76 (4th Cir. 1994), *abrogated on other grounds*; *see also Bankers & Shippers Ins. Co. of N.Y. v. Electro Enters., Inc.*, 415 A.2d 278, 285 (Md. 1980) (explaining, in a duty to defend case, that Maryland law "permits

---

[5] In the prior coverage case, ACAS could have styled its request for declaratory relief in one of two ways.  It could have sought *only* declaratory relief with respect to the duty to defend for the entirety of the heparin litigation.  Then, once all the cases in that litigation concluded, ACAS could have filed a motion for further relief to obtain damages for all of its defense costs.  Or ACAS could have proceeded with its damages suit for defense costs that had already been incurred for the heparin cases, while also bringing a claim for a declaratory judgment regarding Travelers' future obligations.  Either option would have allowed ACAS to pursue damages for the defense costs in *Allen* that were incurred after the judgment in the prior coverage case.

a party to bring one action requesting only a declaratory judgment and then to bring a separate action for further relief based on the rights determined by that judgment").

Here, *Allen*—the basis for ACAS's underlying claim—remained pending during the entirety of the proceedings in the prior coverage case. ACAS thus knew that, if the court held that Travelers owed a duty to defend the heparin litigation, that duty would continue through the life of the *Allen* litigation. *See Luppino*, 677 A.2d at 622 ("[T]he duty to defend is necessarily a continuing one that commences upon notice of the [underlying] claim and extends at least until a judgment is entered and all appeals from it have been resolved."). In other words, ACAS knew that by seeking defense costs only through May 2016, it was excluding costs that had accrued after that date and that would continue to accrue until *Allen* was resolved.

Yet ACAS did not seek a judicial declaration regarding the future obligations of the parties, despite having the ability to do so. Under Maryland law, a party seeking a declaratory judgment can request an "express reservation" of its right to pursue a second action. *CR-RSC Tower I*, 32 A.3d at 470. An "express reservation provision in [an] earlier judgment prevents a res judicata bar, whether in the form of further relief in the declaratory action or in a separate action." *Id.*; *cf. Seidel v. Houston Cas. Co.*, 375 F. Supp. 2d 211, 213 (S.D.N.Y. 2005) (Lynch, J.) (adjudicating, under Maryland law, a suit for "declaratory judgment that [insurer] is liable for defense costs incurred (and any future payments) in the underlying suit"). ACAS also failed to raise the issue with the court when it determined that "there is no need formally to declare the parties' rights and duties." Op. at *13.[6] Rather, ACAS sought damages only for a specific period of time—one which

---

[6] Notably, the only requests for declaratory relief concerned Travelers' duty to indemnify ACAS and the "coverage of SPL as a subsidiary under the 2007 and 2008 Umbrella Policies." Op. at *13. The court did not consider declaratory relief regarding Travelers' duty to defend in the post-judgment period, as ACAS failed to indicate any interest in such relief.

ended before the trial in the prior coverage case even began. *See* ACAS Fifth Am. Interrog. Resp., ECF No. 24-8; ACAS Trial Ex. DX2109, ECF No. 24-9 (indicating that ACAS sought no defense costs or fees after June 2016). And when ACAS moved to amend the judgment to quantify the pre-judgment interest award, it again failed to seek declaratory relief regarding future defense costs. *See* Am. J., ECF No. 24-16.[7] Having decided to forgo a forward-looking remedy in the prior coverage case, ACAS cannot now—several years later—change its mind and seek additional damages for the period that a forward-looking remedy would have covered.

The inability to seek additional damages when such relief could have been sought in the first action is well-established under Maryland law. For example, in *Gonsalves v. Bingel*, 5 A.3d 768 (Md. Ct. Spec. App. 2010), the court considered whether res judicata barred the plaintiffs' suit to recover damages from a breach of contract for the sale of property. *Id.* at 770. The plaintiffs had previously sued the defendant for the same breach, claiming the defendant's deposit as damages. *Id.* As the first case progressed, the plaintiffs attempted to amend their complaint to add a claim for actual damages—the amount the plaintiffs lost when they subsequently sold the property at a lower price than that the defendant had agreed to pay. *Id.* The court denied leave to amend, so the plaintiffs filed suit in a different court seeking that same relief. *Id.* On appeal, the Maryland Court of Special Appeals held that the second action was barred by res judicata, as the claim for actual damages could have been raised in the first suit. *Id.* at 783. The court reasoned that longstanding precedent required breach of contract actions to be brought in a single suit, so the plaintiffs could have (and should have) included all their damages claims in the first action.

---

[7] Under *Nationwide Prop. & Cas. Ins. Co. v. Selective Way Ins. Co.*, 248 A.3d 1044, 1055–56 (Md. 2021), the prejudgment interest sought by ACAS was a matter of discretion, not a matter of right. But the $24,168,159.34 interest award was based on an "as of right" theory and thus vastly overcompensated ACAS. Accordingly, Travelers reserves the right to seek an equitable setoff or recoupment.

*Id.* at 780.  Accordingly, because the first case offered them "ample procedural means for fully developing the entire transaction," the plaintiffs could not pursue additional damages in a subsequent action.  *Id.* at 778, 780.

*Gonzalves* directly bars what ACAS asserts in Count III.  ACAS alleges only a single breach of Travelers' duty to defend, and that breach was litigated in the prior coverage case.  In that action, ACAS had the opportunity to seek a declaratory judgment that would entitle it to future damages stemming from the breach, but it neglected to do so.  Res judicata thus precludes ACAS from recovering any additional damages here, as it could have raised a claim for effectively the same relief in the prior coverage case.

This is not a case where res judicata does not apply because "a plaintiff was precluded from recovering damages in the initial action by formal jurisdictional or statutory barriers."  *Grimes*, 448 F. Supp. 2d at 670 (citation omitted).  In *Grimes*, the court in the prior suit had reviewed an agency action and thus, pursuant to a Maryland rule, could not impose damages.  Because damages were unavailable by reason of a statutory barrier rather than "by plaintiff's choice," the court in the second action held that a subsequent action for damages was not barred by res judicata, even though it arose from the same factual circumstances as the prior action.  *Id.*; *see also Esslinger*, 622 A.2d at 783 (holding that second suit for damages was not barred by res judicata because the court in the earlier administrative appeal had limited jurisdiction and was not authorized to impose damages).  Here, by contrast, ACAS chose to limit its remedy in the prior action to damages for past defense costs, rather than seek declaratory relief that would open the door for later damages

based on future defense costs. No statutory or jurisdictional barriers forced ACAS to make that choice.[8]

In the prior coverage case, ACAS had an unfettered opportunity to seek a declaratory judgment—and ultimately damages pursuant to that judgment—based on the same theory of liability it now asserts in Count III. Accordingly, both Count III and the claims in the prior coverage case are properly considered part of the same transaction. Res judicata therefore bars Count III, and the Court should dismiss it.

**B.     The Settlement Agreement Bars Count III.**

ACAS released its claim for all heparin-related defense costs in its settlement with Travelers, which applied to "all claims for attorneys' fees costs, expenses or other relief asserted in or arising from … the Judgment. Settlement Agreement at 3, ECF No. 25.

When a claim is encompassed by the plain language of a release, it should be dismissed. *See Jarallah v. Thompson*, 123 F. Supp. 3d 719, 726–27 (D. Md. 2015). Under Maryland law, courts "apply the rules of construction of contracts in interpreting a settlement agreement." *O'Brien & Gere Eng'rs, Inc. v. City of Salisbury*, 135 A.3d 473, 489 (Md. 2016). Pursuant to these rules, they "follow the objective interpretation principle, that is, if the language of the

---

[8] It is true that ACAS could not have sought post-judgment damages for the ongoing defense in *Allen* at the time of trial in the prior coverage case. *See Luppino*, 677 A.2d at 622 ("The amount of damage from a breach [of the duty to defend] cannot realistically be determined until the entire case is over."). But that does not mean relief was unavailable at that time. There simply existed a two-step process to recover damages: 1) obtain a declaratory judgment establishing the right to recover defense costs going forward, and 2) file a claim for the additional damages pursuant to the declaratory judgment once the *Allen* litigation concluded. In other words, ACAS was not statutorily or jurisdictionally barred from ultimately recovering post-judgment damages pursuant to its claims in the prior coverage case.

contract is unambiguous, [courts] give effect to its plain meaning and do not delve into what the parties may have subjectively intended." *Id.* (cleaned up).[9]

In the August 2019 settlement agreement, ACAS agreed to "unconditionally and irrevocably remise, release, and absolutely forever discharge Travelers ... from any and all claims for attorneys' fees, costs, expenses or other relief asserted in or *arising from* the Fees Motion or the Judgment." Settlement Agreement at 3, <u>ECF No. 25</u> (emphasis added). Courts "in the insurance context ... appear to be unanimous in interpreting the phrase 'arising out of' synonymously with the term 'arising from.'" *Spirtas Co. v. Fed. Ins. Co.*, 521 F.3d 833, 836 (8th Cir. 2008) (collecting cases). And under Maryland law, the phrase "'arising out of' ... is to be interpreted in accordance with its 'common understanding, namely, to mean originating from, growing out of, flowing from, or the like.'" *M Consulting & Export, LLC v. Travelers Cas. Ins. Co. of Am.*, 2 F. Supp.3d 730, 740 (D. Md. 2014) (quoting *N. Assurance Co. v. EDP Floors, Inc.*, 533 A.2d 682, 688 (Md. 1987); *see also* Black's Law Dictionary (11th ed.) (defining "arise" as "[t]o originate; to stem (from)" or "[t]o result (from)"). Such language should be "broadly construed and exclusion clauses bearing the phrase are generally deemed to be triggered upon a showing of 'but for' causation." *Id.* (cleaned up).

Count III's claims for defense costs arise out of Travelers' duty to defend the heparin litigation—a duty established by the judgment in the prior coverage case. Op. at *10 (holding that Travelers "owed [ACAS] a duty to defend in the heparin litigation at the time this lawsuit was filed"). As one of the 1,064 suits encompassed by the heparin litigation, *Allen* is necessarily

---

[9] Though the release itself is not an insurance contract, it is notable that Maryland law "does not follow the common law rule that insurance contracts are to be interpreted against the insurer.*" M Consulting & Export, LLC v. Travelers Cas. Ins. Co. of Am.*, 2 F. Supp.3d 730, 740 (D. Md. 2014) (citation omitted).

included in that judgment.  And by holding that Travelers had a duty to defend with respect to *Allen*, the judgment established ACAS's eligibility for recovery of defense costs for that suit.  *See Balt. Gas & Elec. Co.*, 688 A.2d at 514.

In other words, had the court in the prior coverage case determined that Travelers did *not* owe a duty to defend ACAS in the heparin litigation, then ACAS could not validly assert a claim for *any* defense costs in *Allen*.  Count III therefore meets the but-for standard of causation, as it would not be a viable claim but for the decision that Travelers owed ACAS a duty to defend.

Although ACAS presents Count III as an independent claim for defense costs in the post-judgment period, its underlying factual and legal bases reveal that Count III arises from the judgment in the prior coverage case, which established Travelers' duty to defend.  *See Travelers Indem. Co. of Am. v. Coleman Auto. of Columbia, LLC*, 236 F. Supp. 2d 513, 516 (D. Md. 2002) ("It is the substance of the underlying claim, not its label, that controls in duty-to-defend and coverage cases.").  In similar contexts, Maryland courts have explained that "the theory of liability employed by the Plaintiff does not affect the analysis." *M Consulting & Export*, 2 F. Supp. 3d at 740 (considering whether a claim "ar[ose] out of" a contract, such that it was covered by an insurance policy exclusion).  To determine whether a claim is covered by an "arising from" provision—in this case, the release—the main focus of the inquiry is the "instrumentality of the injury" underlying the claim.  *Id*.  And here, ACAS' injury stems from Travelers' breach of its duty to defend the heparin litigation.

The duty to defend "arises when the insured is sued on a claim that is covered, or is potentially covered, by the insurance policy." *Balt. Gas & Elec. Co.*, 688 A.2d at 505.  And "the duty is ordinarily determined based on the allegations in the suit and the language of the policy." *Id.*  As a corollary to this rule, where "the complaint contains allegations which may be covered

by the policy, the carrier's duty continues *until such time, if ever*, as the claim might be confined to non-covered allegations." *Id.* at 512 (quoting *Sears, Roebuck & Co. v. Reliance Ins. Co.*, 654 F.2d 494, 496 (7th Cir. 1981)) (emphasis added). Stated simply, unless and until a complaint is amended or otherwise limited to omit all allegations that could be covered, the insurer's duty to defend applies.

In Count III, ACAS alleges that "[t]he *Allen* plaintiff's pleadings during the post-judgment period contained one or more allegations that created the potential for an adverse judgment against ACAS" such that Travelers "owed a duty to defend the *Allen* case." Am. Compl. ¶ 39. But the final amended complaint in *Allen* was filed on February 3, 2017, before the start of trial in the prior coverage case. *See* Am. Compl., *Allen v. Am. Cap. Ltd.* (D. Ariz. Feb. 3, 2017) No. 2:16-cv-02876, ECF No. 123. Thus, with respect to *Allen*, Travelers' duty to defend—as determined by the judgment in the prior coverage case—could not have ended or otherwise changed until the resolution of the suit in 2018. To the extent ACAS claims that any new duty to defend arose in the post-judgment period, that claim lacks merit. Rather, Travelers' duty to defend the *Allen* case in the post-judgment period applied no differently than it did when the judgment established that it existed in the first place. And because Travelers' duty to defend is the same as was decided in the prior coverage case, any damages sought here necessarily arise from the judgment.

ACAS itself acknowledged that the defense costs it seeks here stem from the judgment in the prior coverage case. In its October 2020 demand letter to Travelers, ACAS stated that litigation would not be necessary to determine Travelers' obligation to cover post-judgment defense costs because the decision in the prior coverage case "constitute[s] *stare decisis* as to the coverage of these post-March 2017 defense costs under the [Travelers Policies]." ACAS Correspondence to Travelers, ECF No. 24-3. Simply stated, the letter expressed ACAS's belief that the prior coverage

case squarely decided the issue of post-judgment costs.  This understanding—articulated by the same party claiming that the release does not apply here—further demonstrates that ACAS's claims for post-judgment defense costs arise out of the judgment in the prior coverage case.

As the *Allen* defense costs "arise from" the judgment in the prior coverage case, the plain language in the release covers Count III.  ACAS should thus be precluded from asserting any claim for post-judgment damages with respect to the duty to defend.  Indeed, ACAS's conduct during the settlement negotiations and fundamental fairness support this result.  *See Chi. Title Ins. Co. v. Lumbermen's Mut. Cas. Co.*, 707 A.2d 913, 925 (Md. Ct. Spec. App. 1998) (recognizing "fundamental fairness" as a factor to consider when interpreting a release).

The language of the settlement is broad and indicates a desire by both parties to fully resolve their dispute over the heparin litigation.  And at the time ACAS and Travelers entered settlement negotiations in 2019, the post-judgment defense costs in *Allen* had already been accruing—a fact expressly acknowledged in ACAS's amended complaint.  *See* Am. Compl. ¶ 43 (noting that ACAS incurred defense costs for *Allen* "in and after November 2017").  In fact, *all* defense costs sought by Count III had been incurred by the time the parties signed the settlement, as the *Allen* suit settled in August 2018.  *Id.* ¶ 24.  ACAS was fully aware of these costs and could have raised the issue during negotiations, whether or not it believed that the costs fell outside the scope of the settlement.  Its decision to leave *Allen*'s post-judgment costs out of the settlement discussions indicated that it would not seek any other costs related to the then-concluded heparin litigation.  To now reverse course and pursue such costs undermines the finality and fairness of the settlement.

ACAS willingly agreed to a broad release of all claims related to the judgment in the prior coverage case.  That release precludes any claim for defense costs in a suit covered by Travelers'

duty to defend the heparin litigation.  ACAS cannot now, over a year later, circumvent the terms

of that release and pursue damages for such defense costs.  The Court should thus require ACAS

to adhere to the settlement agreement and dismiss Count III.

## V.  CONCLUSION

Travelers respectfully requests that the Court grant the Motion to Dismiss and dismiss

Count III of the First Amended Complaint with prejudice.

Respectfully submitted,

/s/ *Steven M. Klepper*
Steven M. Klepper, Bar No. 26664
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, MD 21202-3201
sklepper@kg-law.com
(410) 752-6030

Kevin J. O'Connor (Pro Hac Vice)
HERMES, NETBURN, O'CONNOR
  & SPEARING, P.C.
265 Franklin Street, Suite 701
Boston, MA  02110-3113
koconnor@hermesnetburn.com
(617) 728-0050

*Counsel for Defendants*

Dated:  January 6, 2022