## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ACAS, LLC,                              *

     **Plaintiff,**                     *

**v.**                                  *          Civil No. DLB-20-2117

THE CHARTER OAK FIRE                    *
   INSURANCE COMPANY, *et al.*,
                                     *

    **Defendants.**

## MEMORANDUM OPINION

This is an insurance coverage dispute between plaintiff ACAS, LLC ("ACAS") and defendants The Charter Oak Fire Insurance Company ("Charter Oak") and Travelers Property Casualty Company of America ("TPC") (collectively, "Travelers").[1] This dispute began more than a decade ago. In 2008, one of ACAS's portfolio companies issued a recall of all its products that included heparin, a blood-thinning drug commonly used in surgeries, following reports of severe patient reactions, including deaths. At the time, ACAS held insurance policies issued by Travelers. As affected patients began filing lawsuits, the parties litigated in this Court Travelers' obligation to cover the defense costs for the heparin lawsuits. On August 3, 2017, the Honorable Deborah K. Chasanow ruled that Travelers owed a duty to defend the heparin cases and awarded damages to ACAS.

In 2021, after the heparin litigation concluded, ACAS filed a three-count amended complaint seeking a declaration that Travelers must indemnify ACAS for the 2018 settlement in one of the heparin cases, *Allen v. American Capital, Ltd.* ("*Allen*") (Count I); damages against Travelers for breach of contract relating to the *Allen* settlement (Count II); and damages against

---

[1] The Court uses Travelers in the plural to refer to both defendants.

Charter Oak for breach of contract relating to defense costs incurred in connection with *Allen* on and after August 3, 2017 (the "post-judgment period") (Count III).  ECF 42.  Travelers move to dismiss Count III.  ECF 46.  The motion is fully briefed.  ECF 50, 51, 56, 57, & 58.  No hearing is necessary.  *See* Loc. R. 105.6.  For the following reasons, the motion to dismiss is denied.

## I.    Background

Travelers sold to ACAS a primary commercial general liability insurance policy and an umbrella insurance policy for the period of June 14, 2007 to June 14, 2008 (the "Travelers Policies").  ECF 42, ¶ 10.  In January 2009, Travelers filed suit in this Court, seeking to rescind or reform the Travelers Policies and a declaration that they owed ACAS no duty to defend against product liability lawsuits initiated by users of the blood-thinning drug heparin.  *Id.* ¶ 12.  The Court refers to this earlier action, No. DKC-09-100 (filed Jan. 16, 2009), as the "prior coverage case." The same day Travelers filed suit in the prior coverage case, they issued a coverage position letter stating "the heparin lawsuits fall outside the coverage of the primary and umbrella policies."  *Id.* ¶ 13.  A few months later, Travelers issued a second coverage position letter clarifying the denial of coverage included any "duty to indemnify."  *Id.*  At the time, no heparin suit had settled or resulted in an adverse judgment.  *Id.*  Travelers never withdrew their anticipatory repudiation.  *Id.* ACAS filed counterclaims seeking declarations that Travelers' unilateral recission of the Travelers Policies was without legal basis and compensatory damages resulting from Travelers' breach of its contractual obligation to fund the defense of the heparin suits.  ECF 380 in No. DKC-09-100.[2]

---

[2] Additional details about the prior coverage case and the nature of the heparin litigation can be found in Judge Chasanow's opinions, *Charter Oak Fire Co. v. American Capital, Ltd.*, No. DKC 09-100, 2016 WL 827380 (D. Md. Mar. 3, 2016) (summary judgment); *Charter Oak Fire Co. v. American Capital Ltd.*, No. DKC-09-100, 2017 WL 3315306 (D. Md. Aug. 3, 2017) (bench trial), and the Fourth Circuit opinion affirming them, *Charter Oak Fire Ins. Co. v. American Capital, Ltd.*, 760 F. App'x 224 (4th Cir. 2019) (unpublished).

Over the next several years, ACAS and Travelers engaged in extensive discovery in their respective quests for a favorable decision on the duty to defend.  As trial approached, the parties submitted a joint proposed pretrial order.  ECF 661 in No. DKC-09-100.  In a section titled "Details of Damages Claimed and Relief Sought by Defendants," the pretrial order states:

> [ACAS] reserve[s] [its] right to seek further relief from the Court in the future in connection with the still-pending underlying heparin claim to the extent there is any disagreement over coverage for the *Allen* claim once that suit is resolved, in light of the Court's rulings and the jury's verdict in this case.

*Id.* at 74.  Travelers did not object to this reservation.

In August 2017, after a six-week bench trial, Judge Chasanow ruled that Travelers owed a duty to defend the heparin suits and awarded ACAS defense costs incurred in the underlying lawsuits between January 18, 2009 and June 14, 2016.[3]  ECF 42, ¶ 14; *Charter Oak*, 2017 WL 3315306, at *1, *22.  The Court declined to issue declaratory relief, finding that doing so "would not serve a useful purpose" because the Court's findings on ACAS's breach of contract counterclaims resolved the actual controversy.  *Charter Oak*, 2017 WL 3315306, at *13.  Judge Chasanow did not address Travelers' duty to indemnify as to any heparin suit because that issue was not before the Court.  *Id.* at *5; ECF 42, ¶ 15.  The parties cross-appealed to the Fourth Circuit. The Fourth Circuit affirmed Judge Chasanow's "thorough and well-reasoned" decisions and issued its mandate on March 15, 2019.  ECF 42, ¶ 16 (quoting *Charter Oak*, 760 F. App'x at 230).

Two weeks after the Fourth Circuit's affirmance, ACAS moved for an award of attorneys' fees and costs it incurred in seeking coverage from Travelers in the prior coverage case.  ECF 868 & 869 in No. DKC-09-100 (collectively, the "Fees Motion").  In August 2019, the parties entered

---

[3] ACAS's recovery did not reflect the entirety of the defense costs incurred during this period because it redacted some of the invoices evidencing damages and reduced the total of the invoices to account for those redactions.  *Charter Oak*, 2017 WL 3315306, at *22.

into a settlement agreement "to settle all disputes pertaining to the Fees Motion . . . ." ECF 25, at

2. The agreement contained a release, which provides:

> In exchange for the consideration set forth in this Agreement, upon payment of the Settlement Payment, ACAS and SPL . . . hereby unconditionally and irrevocably remise, release, and absolutely and forever discharge Travelers . . . from any and all claims for attorneys' fees, costs, expenses or other relief asserted in or arising from the Fees Motion or the Judgment.

*Id.* at 3. "Judgment" is defined as the Memorandum Opinion and Order and subsequent amendment in the prior coverage case. *Id.* at 1.

Pending at the time of the bench trial in the prior coverage case was *Allen*, the heparin suit giving rise to the present dispute. ECF 42, ¶ 21. The decedent in *Allen* was administered heparin in December 2007 and died in March 2008; both events occurred within the policy period of the Travelers Policies. *Id.* The *Allen* wrongful death suit was filed in February 2010. *Id.* ¶¶ 18–19. In March 2018, nearly a year after the bench trial in the prior coverage case concluded, the parties in *Allen* reached an agreement-in-principle to settle. *Id.* ¶ 23. At that time, Travelers had not withdrawn their 2009 anticipatory denial of indemnity coverage. *Id.* The *Allen* settlement was executed on August 15, 2018. *Id.* ¶ 24. In October 2020, ACAS tendered to Charter Oak invoices for fees and expenses it incurred in *Allen* during the post-judgment period. *Id.* ¶ 42. Charter Oak responded with a new coverage-denial letter providing new reasons for refusing payment. *Id.* Travelers still have not withdrawn their original 2009 coverage denials. *Id.* ¶ 41.

At issue in this case is whether Travelers must indemnify ACAS for the *Allen* settlement and pay the post-judgment period *Allen* defense costs.[4] Travelers have answered Counts I and II

---

[4] ACAS defended the *Allen* suit and incurred defense costs both before and after August 3, 2017— the date of the judgment in the prior coverage case. It is not clear to the Court whether ACAS recovered any accrued *Allen* defense costs in the prior coverage case. In this case, ACAS seeks recovery of *Allen* defense costs that were incurred after August 3, 2017. The first post-judgment period *Allen* defense costs were incurred in November 2017. ECF 42, ¶ 38.

concerning the duty to indemnify.  ECF 9.  They have moved to dismiss Count III, the claim for defense costs.  ECF 46.  Travelers argue Count III should be dismissed because it is barred by the release provision in the August 2019 settlement agreement and by principles of *res judicata*.

## II.    Standard of Review

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted."  *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)).  To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court.  *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A plausible claim is more than merely conceivable or speculative.  *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022).  When ruling on a Rule 12(b)(6) motion, the Court must accept the pleaded allegations as true and draw all reasonable inferences in favor of the pleader.  *Williams v. Kincaid*, 45 F.4th ----, 2022 WL 3364824, at *3, *13 (4th Cir. Aug. 16, 2022).

The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."  *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).  The Court may, however, reach an affirmative defense on a motion to dismiss "if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'"  *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis deleted).  When presented with a motion to dismiss on the ground of *res judicata*, "a court may take judicial notice of facts from a prior judicial proceeding when the *res judicata* defense raises no disputed issue of fact[.]"  *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (citations

omitted).  The parties do not dispute the relevant facts of the proceedings in the prior coverage case, and the Court takes judicial notice of them.

## III. Discussion

### A. Settlement Agreement

Travelers argue that ACAS released its claim for *Allen* defense costs in the parties' 2019 settlement agreement.  Travelers asks the Court to consider the settlement agreement, a document not integral to or referenced in the amended complaint, but they do not move for summary judgment.  ACAS notes this procedural irregularity but does not contend that the settlement agreement is ambiguous or that factual disputes prevent the Court from interpreting the agreement's unambiguous language.  Rather than delay resolution of this question on procedural grounds, the Court will convert Travelers' motion to dismiss to a motion for summary judgment on this issue and consider the settlement agreement.[5]  *See Logar v. W. Va. Univ. Bd. of Governors*, 493 F. App'x 460, 461–62 (4th Cir. 2012) (unpublished per curiam) (citing Fed. R. Civ. P. 12(d)). Travelers, as the moving parties, bear the burden of establishing they are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

The settlement agreement provides:

> In exchange for the consideration set forth in this Agreement, upon payment of the Settlement Payment, ACAS and SPL . . . hereby unconditionally and irrevocably

---

[5] Proper conversion under Rule 12(d) requires (1) that all parties "be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment;" and (2) that all parties "be afforded a reasonable opportunity for discovery."  *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).  The notice requirement is satisfied when a party is "aware that material outside the pleadings is before the court."  *Id.*; *see also Laughlin v. Metro Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating courts "do[] not have an obligation to notify parties of the obvious").  And "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'"  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

remise, release, and absolutely and forever discharge Travelers . . . from any and all claims for attorneys' fees, costs, expenses or other relief asserted in or arising from the Fees Motion or the Judgment.

ECF 25, at 3. The interpretation of the settlement agreement is a question of law. *Homeland Training Ctr., LLC v. Summit Point Auto. Research Ctr.*, 594 F.3d 285, 290 (4th Cir. 2010) (citing *Williams v. Prof'l Transp., Inc.*, 294 F.3d 607, 613 (4th Cir. 2002)). The parties agree Maryland law applies.

Maryland courts apply "the rules of construction of contracts in interpreting a settlement agreement[,]" and they follow the objective theory of contract interpretation. *O'Brien & Gere Engineers, Inc. v. City of Salisbury*, 135 A.3d 473, 489 (Md. 2016) (citing *Clark v. Elza*, 406 A.2d 922 (Md. 1979)). Under the objective theory, "[i]f a contract is unambiguous, the court must give effect to its plain meaning and not contemplate what the parties may have subjectively intended by certain terms at the time of formulation." *Nova Research, Inc. v. Penske Truck Leasing Co.*, 952 A.2d 275, 283 (Md. 2008) (citing *Diamond Point Plaza Ltd. P'ship v. Wells Fargo Bank, N.A.*, 929 A.2d 932, 952 (Md. 2007)). "A contract is ambiguous if, when read by a reasonably prudent person, it is susceptible to more than one meaning." *Id.* When interpreting a contract's terms, courts must "look to the entire language of the agreement, not merely a portion thereof[,]" and must "consider the customary, ordinary and accepted meaning of the language used." *Id.* Courts also should consider "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution." *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 488 A.2d 486, 488 (Md. 1985).

With these principles in mind, the Court considers the plain language of the release provision. It extends to "any and all claims for attorneys' fees, costs, expenses or other relief asserted in or arising from the Fees Motion or the Judgment." The claim for post-judgment period

*Allen* defense costs was not asserted in the Fees Motion or the Judgment.  In the Fees Motion, ACAS sought, pursuant to Rule 54(d) of the Federal Rules of Civil Procedure, only the attorneys' fees and costs it incurred in litigating the prior coverage case.  *See* ECF 868 in No. DKC-09-100 (renewed motion requesting award of attorneys' fees); ECF 869-1 in No. DKC-09-100 (memorandum in support of bill of costs).  And of course, no claims were or could have been "asserted in" the Judgment because it is an opinion of this Court and not a pleading.  Even if the "asserted in" language were to be interpreted broadly to encompass all the claims resolved by the Judgment, the claim for post-judgment period *Allen* defense costs was not a part of the prior coverage case.

Nor does the claim for post-judgment period *Allen* defense costs arise from the Fees Motion or the Judgment.  Maryland courts interpret "arising out of"—language substantively identical to "arising from," *see Spirtas Co. v. Fed. Ins. Co.*, 521 F.3d 833, 836 (8th Cir. 2008) (collecting cases)—"in accordance with its 'common understanding, namely, to mean originating from, growing out of, flowing from, or the like.'"  *M Consulting & Export, LLC v. Travelers Cas. Ins. Co.*, 2 F. Supp. 3d 730, 740 (D. Md. 2014) (quoting *N. Assurance Co. v. EDP Floors, Inc.*, 533 A.2d 682, 688 (Md. 1987)).  The phrase "implies only 'but for' causation."  *Beretta U.S.A. Corp. v. Fed. Ins. Co.*, 17 F. App'x 250, 253 (4th Cir. 2001) (unpublished per curiam) (citing *Mass Transit Admin. v. CSX Transp., Inc.*, 708 A.2d 298, 307 (Md. 1998)).  The plain meaning of "claims . . . arising from the Fees Motion or the Judgment," then, is claims that would not exist but for the Fees Motion or the Judgment.  For example, the "arising from" language clearly includes a demand for attorneys' fees incurred in litigating the prior coverage case because the right to those fees would not exist but for the Judgment.  In contrast, the claim for post-judgment period *Allen* defense costs does not exist because of, originate from, or grow out of the Fees

Motion, which was a request for the fees ACAS incurred in seeking coverage under the Travelers Policies.  Likewise, the claim for post-judgment defense costs does not originate or flow from the Judgment, which awarded damages only for already-accrued defenses costs.  If the entire prior coverage case, including the Judgment, did not exist, ACAS could still seek *Allen* defense costs for the period in question because all the facts giving rise to that claim would still exist—they are independent from the Judgment.

Zooming out from the language of the release, other parts of the settlement agreement provide further support for the conclusion that the release is not as extensive as Travelers argue. In the recitals, the parties noted that Travelers had already "paid in full" the amounts awarded to ACAS in the Judgment.  ECF 25, at 1.  The remaining dispute in the prior coverage case was the Fees Motion.  The parties went on to express their shared "desire to settle all disputes pertaining to the Fees Motion . . . ."  *Id.*  It is crystal clear from these recitals that the settlement agreement, including the release, was intended to resolve the remaining dispute about fees and costs incurred in litigating the prior coverage case.  The unambiguous language of the release reflects this purpose—the Fees Motion asserted fees and costs that arose from the Judgment.  Neither the language of the agreement nor its context indicates the parties intended to release all future claims based on heparin suits like the pending claim for post-judgment period *Allen* defense costs.

The release provision in the parties' 2019 settlement agreement does not bar recovery for post-judgment period defense costs in *Allen*.

### B.  *Res Judicata*

*Res judicata*, also known as claim preclusion, "bars a party from relitigating a claim that was decided or could have been decided in an original suit."  *Laurel Sand & Gravel, Inc. v. Wilson*,

519 F.3d 156, 161 (4th Cir. 2008).[6]   The doctrine "avoids the expense and vexation attending multiple lawsuits, conserves the judicial resources, and fosters reliance on judicial action by minimizing the possibilities of inconsistent judgments."   *Davis v. Wicomico Cnty. Bureau*, 135 A.3d 419, 422 (Md. 2016) (citations and internal quotation marks omitted).

In its simplest application, *res judicata* prevents a party involved in a suit before one court from bringing the same claim against the same counterparty before a different court and seeking a different outcome.   A more complex application, for which Travelers advocate, prevents a party from bringing a claim that it could have brought, but did not bring, in an earlier suit.   Travelers argue ACAS could have raised in the prior coverage case its claim for post-judgment period *Allen* defense costs by seeking a declaration of its right to future *Allen* defense costs.   Because ACAS did not do so, Travelers argue that *res judicata* prevents ACAS from raising the claim in this action. ACAS counters that it could not have sought in the prior coverage case the relief it now seeks in Count III—damages for defense costs incurred after the judgment—and that in any event, the parties agreed in effect during the prior coverage case that ACAS could split its claim for future *Allen* defense costs, triggering an exception to *res judicata*.   The Court agrees with ACAS and concludes that *res judicata* does not bar Count III.

---

[6] The terminology courts use when discussing claim preclusion, on the one hand, and issue preclusion or collateral estoppel, a related concept, on the other, varies and sometimes blurs together.   *Compare Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (stating claim preclusion and issue preclusion "are collectively referred to as '*res judicata*'"), *with Smalls v. Md. State Dep't of Educ., Off. of Child Care*, 127 A.3d 610, 615 (Md. Ct. Spec. App. 2015) (stating *res judicata* and collateral estoppel "are not, it should be carefully noted, Tweedledum and Tweedledee" and "are far less confusing when they are kept carefully apart").   Like the parties, the Court uses "*res judicata*" to mean claim preclusion.

### 1.  ACAS could not have pursued damages for future defense costs

The preclusive effect of the judgment in the prior coverage case, which was issued by a federal court sitting in diversity, is governed by the law of the forum state.  *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507–09 (2001); *Q Int'l Courier Inc. v. Smoak*, 441 F.3d 214, 218 (4th Cir. 2006).  In Maryland, *res judicata* applies when three elements are met:

(1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation;

(2) the claim presented in the current action is identical to that determined or that which could have been raised and determined in the prior litigation; and

(3) there was a final judgment on the merits in the prior litigation.

*Spangler v. McQuitty*, 141 A.3d 156, 175 (Md. 2016) (quoting *Cochran v. Griffith Energy Servs., Inc.*, 43 A.3d 999, 1002 (Md. 2012)).  It is clear the first and third elements are met here because the prior coverage case involved the same parties and produced a final judgment on the merits. The dispute lies in the second element, whether ACAS could have raised and had determined its claim for post-judgment period *Allen* defense costs in the prior coverage case.

Regarding the second element of *res judicata*, Maryland courts have adopted the "transactional" approach articulated in § 24 of the Restatement (Second) of Judgments ("Restatement").  *Colandrea v. Wilde Lake Cmty. Ass'n, Inc.*, 761 A.2d 899, 908–09 (Md. 2000); *Esslinger v. Baltimore City*, 622 A.2d 774, 779 (Md. Ct. Spec. App. 1993) (citing *Kent Cnty. Bd. of Educ. v. Bilbrough*, 525 A.2d 232, 237–38 (Md. 1987)).  Section 24 defines "claim" as a "transaction, or series of connected transactions, out of which the action arose."  *Bilbrough*, 525 A.2d at 238 (quoting Restatement § 24).  A claim is

coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded;

and regardless of the variations in the evidence needed to support the theories or
rights.

*Id.* at 237 (quoting Restatement § 24 cmt. a).  What constitutes a transaction or series of connected
transactions is "determined pragmatically, giving weight to such considerations as whether the
facts are related in time, space, origin, or motivation, whether they form a convenient trial unit,
and whether their treatment as a unit conforms to the parties' expectations or business
understanding or usage." *Id.* at 238 (quoting Restatement § 24).  In essence, "if the two claims or
theories are based on the same set of facts and one would expect them to be tried together
ordinarily, then a party must bring them simultaneously." *Anand v. O'Sullivan*, 168 A.3d 1030,
1043 (Md. Ct. Spec. App. 2017) (quoting *Anne Arundel Cnty. Bd. of Educ. v. Norville*, 887 A.2d
1029, 1038 (Md. 2005)).

Notwithstanding the above, "the unavailability of procedural means to develop fully the
entire transaction, in some cases, may serve as a limitation to the application of claim preclusion."
*Patel v. HealthPlus, Inc.*, 684 A.2d 904, 917 (Md. Ct. Spec. App. 1996) (citing *Shum v. Gaudreau*,
562 A.2d 707, 712–13 (Md. 1989)); *Billbrough*, 525 A.2d at 238 ("Equating claim with
transaction, however, is justified only when the parties have ample procedural means for fully
developing the entire transaction in the one action . . . .") (quoting Restatement § 24 cmt. a).  And
"[p]art and parcel of being afforded 'ample procedural means' in an initial action . . . is also being
afforded the opportunity to pursue all of one's *remedies* in that action." *Esslinger*, 622 A.2d at
782 (citing Restatement § 26(1)(c)).  Thus, when a certain remedy or form of relief is unavailable
in an earlier action, *res judicata* does not preclude a subsequent claim for that form of relief even
if the actions concerned the same transaction.  *See Grimes v. Miller*, 448 F. Supp. 2d 664, 670 (D.
Md. 2006) (holding *res judicata* did not bar a second suit for damages because the court in the
earlier suit could not impose damages).  Conversely, when a type of damages was not sought in a

prior action but had accrued and could have been sought, *res judicata* bars a second suit for that type of damages.  *See Gonsalves v. Bingel*, 5 A.3d 768, 782–83 (Md. Ct. Spec. App. 2010).

So, even if ACAS's claim for post-judgment period *Allen* defense costs is part of the same transaction as the claims in the prior coverage case, Maryland law is clear that *res judicata* should not bar the claim if ACAS lacked the procedural means to "develop[] fully the entire transaction in the one action . . . ."  *Esslinger*, 622 A.2d at 780 (rejecting application of *res judicata* even though "[u]nder the 'transaction' approach, it is clear that the [earlier] claim . . . is identical to the present claim").  ACAS argues it could not have pursued damages for future *Allen* defense costs before those damages accrued.  Travelers do not disagree with that position.  Rather, they argue that, during the prior coverage action, ACAS knew *Allen* remained pending, expressly indicated it sought *Allen* defense costs, and, therefore, could have pursued a declaration of its right to pursue future defense costs in *Allen*.[7]  The Court agrees that ACAS could have sought such a declaration. *Bankers & Shippers Ins. Co. v. Electro Enters., Inc.*, 415 A.2d 278, 285 (Md. 1980) (explaining, in defense coverage dispute, that "a party [may] bring one action requesting only a declaratory judgment and then [] bring a separate action for further relief based on the rights determined by that judgment"); *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375–76 (4th Cir. 1994), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) (holding federal courts may issue declaratory judgments "to resolve disputes over liability insurance coverage, even in advance of a judgment against the insured on the underlying claim").  But to what end?  Even if ACAS had sought and received a declaration that it had a right to pursue future *Allen* defense

---

[7] Travelers suggest ACAS had two options: (1) pursue only declaratory relief regarding the duty to defend the heparin litigation and subsequently file for further relief to obtain all damages, or (2) bring alongside its damages claims a declaratory judgment claim regarding Travelers' future obligations.

costs, that would not have prevented future litigation.  This is because the duty to defend was ongoing, the *Allen* defense costs continued to accrue, and a declaratory judgment therefore could not have accounted for any number of issues that would give rise to further disputes over, for example, whether ACAS violated a policy provision that might preclude coverage.  At the very least, the parties would have returned to court to determine the precise amount of post-judgment period *Allen* defense costs and whether those costs were reasonable.

The Maryland Court of Appeals has not squarely addressed the question presented here.  It has, however, suggested *res judicata* may not bar an action for damages that had not yet accrued at the time of an earlier suit.  In *Bankers & Shippers Insurance Co.*, several insureds brought claims for defense costs against their insurer.  415 A.2d at 284.  In a prior action, the insurer had sought a declaratory judgment that it owed no duty to defend the insureds, and the court had rejected its arguments and declared there was coverage under the policy.  *Id.* at 281.  The Court of Appeals held that *res judicata* did not bar the action for defense costs as further relief based on the earlier declaratory judgment and that collateral estoppel precluded the insurer from relitigating coverage, either with old arguments or new ones.  *Id.* at 285.  While *Bankers & Shippers* does not speak directly to the issues in this case, some of the language used by the Court of Appeals is notable.  In its analysis, the Court described *res judicata* as requiring "that a party bring his entire claim, including a request *for accrued damages* or other relief, in one action, and prevent[ing] a second suit on the same cause of action for damages or other relief *which had accrued* but were not requested at the time of the first suit."  *Id.* (emphasis added).

This language is consistent with the holdings of three cases applying Maryland law and rejecting the application of *res judicata* where the plaintiffs could not have obtained total relief in an earlier suit.  In *Esslinger*, the Court of Special Appeals held a judgment in an earlier appeal of

a decision by a local zoning board to deny the plaintiff a permit did not preclude a subsequent suit for damages based on the denial of the permit.  622 A.2d at 781–82.  The Court reasoned the damages claims "could not have been asserted in the circuit court action reviewing the initial zoning case" due to the limited scope of the appeal.  *Id.* at 783.  In *Grimes*, this Court applied *Esslinger* and held the plaintiff's earlier petition for the reversal of a town council's decision to remove her from the council did not preclude her subsequent suit for damages based on her removal.  448 F. Supp. 2d at 671.  Judge Messitte was persuaded by the uncontested fact that damages were not available in the state court action.  *Id.* at 669–70.  And in *Shum v. Gaudreau*, 562 A.2d 707 (Md. 1989), the Court of Appeals held the judgment in a landlord's earlier action for summary ejectment precluded some but not all of the landlord's claims for damages in a subsequent action.  *Id.* at 715–16.  The earlier action was limited to repossession of the premises and unpaid rent; thus, only the claims for damages "deemed additional rent" were barred by *res judicata*.  *Id.* at 716.  While those cases concerned prior actions in which the courts lacked jurisdiction to award damages and are thus distinguishable from this case, their reasoning naturally extends to a situation where, as here, the later-sought damages had not yet accrued at the time of the prior action.  In both situations, the form of relief sought in the second action was not available in the first, meaning a second action was necessary to develop fully the entire underlying transaction.  "It is clear enough that a litigant should not be penalized for failing to seek unified disposition of matters that could not have been combined in a single proceeding."  18 Wright & Miller, *Fed. Prac. & Proc.* § 4412 (3d ed. 2022).

Travelers cite several cases to support their argument that *res judicata* applies here, but the Court is not persuaded.  In *Gonsalves*, plaintiff property owners claimed the defendant breached a contract to purchase their property.  5 A.3d at 770.  In an earlier action, the plaintiffs had recovered

the value of a deposit required by the contract.  The Court of Special Appeals held *res judicata* barred the plaintiffs' subsequent claim for actual damages based on the difference between the contracted sales price and the price paid by a replacement purchaser.  *Id.* at 778.  Critically, the actual damages had accrued during the earlier suit; indeed, the plaintiffs had sought to amend their claims in that action to include those damages.  *Id.* at 715–16.  Here, ACAS seeks only damages that accrued after the judgment in the prior coverage case.  And *Patel*, which involved three separate suits by a physician against a Health Maintenance Organization for sums due under the same contract, is distinguishable for the same reason: "All the claims . . . could have been combined in one claim   . . . at the time of the original suit."  684 A.2d at 917.

*Luong* and *Hartman* are more on-point, but the Court is not persuaded to follow either.  In *State Farm Fire & Casualty Co. v. Luong*, No. 2:17CV248, 2017 WL 11509350 (E.D. Va. Dec. 15, 2017), plaintiff insureds brought two separate suits to recover repair costs for their home following a flood.  *Id.* at *1.  The first suit sought damages for repairs already done, and the second sought damages for repairs finished after the end of the first suit.  *Id.* at *1–2.  The U.S. District Court for the Eastern District of Virginia held the second suit was barred by *res judicata* because the insurer's denial of coverage was a single actionable breach of contract and the plaintiffs could have sought a declaration of their rights under the policy in the first suit—in other words, because "the coverage dispute was <u>entirely</u> redressable in the Luong's [sic] first action."  *Id.* at *4.  *Luong* is distinguishable because it was a first-party property loss case, not a suit for defense costs, and courts "routinely award damages based on the estimated cost of future repairs" in such cases.  *Id.* Additionally, a key part of the district court's analysis was the language of the underlying policy, which is dissimilar to the policies here because it required the insureds to submit "detailed estimates for repair of the damage" within 60 days of the loss.  *See id.*

*Hartman v. St. Paul Fire & Marine Insurance Co.*, 40 F. Supp. 2d 837 (N.D. Tex. 1998), meanwhile, involved an insured's attempt to recover, in a second suit, additional defense costs based on the same duty to defend the same underlying lawsuit for a different time period. The insured filed the first coverage action while the underlying lawsuit remained pending, and he sought only defense costs incurred through February 1994. *Id.* at 838. After the underlying lawsuit settled, and after the insured received a favorable judgment in the first coverage action, the insured filed a second coverage action seeking defense costs incurred after February 1994. *Id.* at 839. In holding *res judicata* barred the second action, the district court relied heavily on a comment to § 25 of the Restatement that suggested *res judicata* should bar a claim by a plaintiff who "becomes dissatisfied with his recovery and commences a second action to obtain increased damages," even if the plaintiff's injury extends into the future and she previously lacked sufficient information about her prospective damages. *Id.* at 841 (quoting Restatement § 25 cmt. c). Comment "c" addresses situations where a plaintiff who has obtained a damages award returns to court for additional, previously accrued damages, claiming the prior award was insufficient. *See Gonsalves*, 5 A.3d at 783 (discussing Restatement § 25 cmt. c). Such is not the case here. This case is more aligned with a different Restatement comment that advises, consistent with the above analysis, that "[p]reclusion is narrower when a procedural system in fact does not permit the plaintiff to claim all possible remedies in one action[.]" Restatement § 25 cmt. f.[8]

At most, Travelers' cases support the proposition that had ACAS sought declaratory relief for future *Allen* defense costs, *res judicata* clearly would not apply. *See Bankers & Shippers*, 415

---

[8] Although the *Hartman* decision is not explicit on this point, the court may have relied on comment "c" because the insured in the second coverage action may have sought defense costs that had accrued several months before the judgment in the first coverage action. *See Hartman v. St. Paul Fire & Marine Ins. Co.*, No. 3:93-CV-890, 1998 WL 159939, at *1 (N.D. Tex. Apr. 1, 1998) (noting the first coverage action went to trial in June and July 1994).

A.2d at 284 ("It is clear that the traditional principles of res judicata . . . are inapplicable in the context, as in this case, of a statutory action for further relief based on a declaratory judgment."); *CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 32 A.3d 456, 470 (Md. Ct. Spec. App. 2011) (noting an "express reservation provision in [an] earlier judgment prevents a res judicata bar, whether in the form of further relief in the declaratory action or in a separate action"). But this does not make the converse true.

Ultimately, Travelers bear the burden of establishing the defense of *res judicata*. The Court finds they have not met their burden. The purposes of *res judicata*—sparing the expense and vexation of multiple lawsuits, conserving judicial resources, and minimizing the possibility of inconsistent judgments, *see Davis*, 135 A.3d at 422—would not be served by its application in this case. Travelers admit that even if ACAS had obtained a declaration of its right to pursue future defense costs in the prior coverage case, ACAS still would have had to return to court to recover its damages pursuant to that judgment. ECF 51, at 13. That hypothetical second suit would be practically identical in scope to the present action. A declaration, therefore, would not have avoided multiple lawsuits or conserved the Court's resources. For this reason, Travelers' proposed application of *res judicata* is more akin to a sword striking down a necessary second suit than to a shield protecting from a vexatious subsequent suit. Nor would the possibilities of inconsistent judgments have been reduced; as Travelers states repeatedly in its briefing, the judgment in the prior coverage case already resolved the duty to defend in *Allen*. *See* ECF 46-1, at 9, 13, 15–16, 19; ECF 51, at 8–10; ECF 58, at 9–10. If subsequent events justify departing from that judgment, as Travelers likely intend to argue, such would be equally true if the judgment had come in the form of a declaration.

Maryland law on *res judicata* and the principles underlying the doctrine counsel the judgment in the prior coverage case does not preclude ACAS from now seeking post-judgment period *Allen* defense costs.

### 2.   Travelers agreed in effect to claim splitting

Even if Travelers had satisfied the three elements of *res judicata*, the claim for post-judgment period *Allen* defense costs nevertheless would not be barred because an exception applies here.  In Maryland, *res judicata* does not bar a claim where the parties "have agreed on terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein[.]"  *Lake v. Jones*, 598 A.2d 858, 862 (Md. Ct. Spec. App. 1991) (quoting Restatement (Second) of Judgments § 26(1)(a) (1982)).  ACAS argues its reservation in the pretrial order in the prior coverage case constitutes an agreement in effect that it could split its claim for *Allen* defense costs, preventing application of *res judicata*.[9]  The Court agrees.

The Maryland courts have not addressed specifically the agreement-in-effect exception to *res judicata*.  The parties cite persuasive authority from Illinois, which, like Maryland, has adopted the Restatement provision articulating the exception.  *See Kantner v. Waugh*, 79 N.E.3d 892, 898 (Ill. App. Ct. 2017) (citing *Rein v. David A. Noyes Co.*, 665 N.E.2d 1199, 1207 (Ill. 1996)).  Illinois courts interpret the agreement-in-effect exception to apply where defendants "imply by their conduct that they will not object to claim-splitting . . . ."  *Id.* at 899 (citing *Dinerstein v. Evanston Athletic Clubs, Inc.*, 64 N.E.3d 1132, 1148 (Ill. App. Ct. 2016)).  "Under this analysis, [courts] do not look for express words or an express waiver of a *res judicata* defense."  *Id.*  Instead, they "look to conduct and resulting implications under the totality of the circumstances."  *Id.*  Likewise, this

---

[9] ACAS concedes that the reservation does not give rise to an agreement in terms or an acquiescence.

Court, when applying federal law to determine whether a defendant agreed in effect to claim-splitting, considered "the sum of" the defendant's actions, including his arguments in the prior case, his failure to address the plaintiff's stated intent to split her claims, and his failure to object during administrative proceedings on the split claim. *Gaines v. Anderson*, No. RDB-17-2755, 2019 WL 280269, at *4 (D. Md. Jan. 22, 2019) (finding defendant's actions revealed "that he has effectively assented to claim-splitting").

Silence, or a party's failure to object to claim-splitting, does not constitute by itself an agreement in effect. *See Kantner*, 79 N.E.3d at 899 ("Silence alone is not enough. . . . The defendant, in word or deed, must imply that the defendant will not object to the claim-splitting if and when the action is refiled.") (quoting *Dinerstein*, 64 N.E.3d at 1147); *Dinerstein*, 64 N.E.3d at 1147 ("[M]ere silence alone cannot be sufficient to establish an 'agreement in effect.'"); *Gaines*, 2019 WL 280269, at *4 ("Defendant's failure to object on *res judicata* grounds in his EEOC position statement is not determinative."). *But see R & J Holding Co. v. Redev. Auth. of Cnty. of Montgomery*, 670 F.3d 420, 428 (3d Cir. 2011) (holding persistent silence over years of litigation and multiple references by the other party to claim splitting triggered the exception). Some affirmative act is necessary:

> [T]he law must recognize a qualitative difference between a defense attorney making no representations, one way or the other, concerning a plaintiff's right to refile her claim, and that defense attorney engaging in conduct that, while falling short of an express consent (an 'agreement in terms'), implies that the defendant will not object to a refiling of the claim based on *res judicata*.

*Dinerstein*, 64 N.E.3d at 1148; *see also Pueschel v. United States*, 369 F.3d 345, 356 (4th Cir. 2004) (holding exception to *res judicata* applied where the defendant had "consented to the [claim] splitting" by representing in the initial action that the plaintiff had filed the challenged claim in another action and, as a result, that the claim was "not part of the [present] lawsuit") (quoting *Keith*

*v. Aldridge*, 900 F.2d 736, 740 (4th Cir. 1990) (quoting Restatement (Second) of Judgments § 26(1)(a) cmt. a)).

Here, Travelers' conduct in the prior coverage case shows they agreed in effect to ACAS's reservation of rights to bring a claim for post-judgment period *Allen* defense costs in a separate suit. As the parties neared trial in the prior coverage case, they prepared a joint pretrial order, as they were required to do under Rule 16 of the Federal Rules of Civil Procedure, the Court's Order, ECF 565 in No. DKC-09-100, and Local Rule 106. The pretrial order is a major event during litigation. Doubtless, parties pay close attention to its contents because it "controls the subsequent course of the action." Fed. R. Civ. P. 16(d). Preparation of the joint pretrial order is a collaborative process. Counsel must work together to craft the proposed pretrial order, exchanging drafts in the weeks before the order is due, and if they are unable to agree upon any particular provision, objecting or submitting separate draft proposals on the disputed provisions. Loc. R. 106.3; *see also* 6A Wright & Miller, *Fed. Prac. & Proc.* § 1526 (3d ed.) ("A common technique seems to be to require the opposing counsel to agree upon and formulate an order, filing it for the court's approval."). Travelers participated in this process and exchanged drafts with ACAS. *See* ECF 623 in No. DKC-09-100 (noting parties were meeting and conferring); ECF 690, at 22:21–25, in No. DKC-09-100 (representing the parties were exchanging drafts). At the conclusion of that process, the parties filed the joint pretrial order in which ACAS reserved its "right to seek further relief from the Court in the future in connection with the still-pending underlying heparin claim to the extent there is any disagreement over coverage for the *Allen* claim once that suit is resolved." ECF 661 in No. DKC-09-100. Travelers signed the joint proposed pretrial order and filed it with the Court. *Id.* at 83.

Travelers did not object to or otherwise comment on the reservation, even though they objected to other problematic provisions in the proposed order.  For example, Travelers asked the Court to rule on their objection to ACAS's claims for damages for settlements and judgments paid in the heparin litigation.  ECF 690, at 20:6 – 23:12, in No. DKC-09-100.  ACAS had expressed its intent to pursue these claims in its summary of requested relief in the pretrial order, within a few paragraphs of the reservation at issue.  *See* ECF 661, at 73, in No. DKC-09-100 (referring to ECF 661-1, at 5, in No. DKC-09-100).  The Court agreed that ACAS could not seek damages for paid settlements and judgments, concluding ACAS never "pled breach of duty to indemnify in this case, and it's too late, too close to trial to revisit that."  *Charter Oak*, 2017 WL 3315306, at *5 (quoting ECF 764, at 18:16–18, in No. DKC-09-100).[10]  Similarly, Travelers moved to preclude ACAS from seeking prejudgment interest, another form of relief identified in the pretrial order.  ECF 655 in No. DKC-09-100.  But rather than lodge an objection to ACAS's reservation of rights to seek further relief after *Allen* concluded, Travelers left unchallenged that aspect of the collaborative document.  Thus, ACAS's carve out for the still-pending *Allen* suit was not a unilateral declaration.  It was part of a joint submission to the Court, carefully reviewed and edited by adverse parties and signed by their respective counsel.

Travelers argue their failure to object was tantamount to silence, which they maintain cannot give rise to an agreement in effect.  Travelers, however, were not merely silent.  They had every opportunity to review the reservation of rights, object to it as they had to other provisions, and ask the Court to rule on their objections, as they did with their objections to ACAS's

---

[10] Travelers acknowledge that they objected to, and asked the Court for a ruling on, ACAS's interpretation of its counterclaim to include a claim for indemnity.  ECF 56, at 3 n.2 ("[A]s part of ACAS's same summary of its requested relief, ACAS said it was claiming indemnity for past settlements and judgments.  But Travelers disputed this reading of ACAS's counterclaim, and the court later rejected it.").

counterclaims and request for prejudgment interest.  Yet they chose not to object and instead submitted a joint proposed order to the Court.  Their submission was not inaction; it was affirmative conduct.  The only reasonable interpretation of Travelers' conduct is that they effectively implied they would not object to ACAS seeking relief from the Court in the future for coverage for the *Allen* claim once that suit was resolved.  This conduct triggers the exception to *res judicata*, as did affirmative conduct in the cases holding silence is not enough.  In *Kantner*, the defendants initially proposed the idea that the plaintiff voluntarily dismiss his claims and refile them later, did not correct the court's statement that if the plaintiff did so the trial would still take place, and offered to draft the order dismissing the claims.  79 N.E.3d at 900.  In *Dinerstein*, counsel for the parties discussed the possibility "of securing a voluntary dismissal without prejudice, *so the case could be refiled* and the trial date avoided," and defendant's counsel agreed it was a viable option and provided a copy of the rule providing for voluntary dismissals.  *Dinerstein*, 64 N.E.3d at 1143.  And in *Gaines*, the defendant moved to dismiss the claim in question as unexhausted, failed to reply to the plaintiff's response that the claim was pending before the Equal Employment Opportunity Commission, and failed to object to the claim on *res judicata* grounds during the administrative proceedings.  2019 WL 280269, at *4.  Like the defendants in *Kantner*, *Dinerstein*, and *Gaines*, Travelers implied through their conduct that they would not object to the proposed claim-splitting.

Travelers next argue that the reservation is ambiguous because the language "most reasonably" refers to coverage claims for indemnification, not defense costs.  The Court disagrees.  When the reservation is read in light of the principles of Maryland law on contract interpretation, it unambiguously includes coverage for future defense costs in *Allen*.  The reservation begins with broad language: the "right to seek further relief from the Court in the future in connection with the

still-pending underlying heparin claim, . . . ."  The "still-pending underlying heparin claim" is *Allen*, as the next clause makes clear: "to the extent there is any disagreement over coverage for the *Allen* claim once that suit is resolved, . . . ."  Both the parties and this Court have routinely used the word "coverage" to include coverage for defense costs and indemnification, so "coverage for the *Allen* claim" refers to both future claims for indemnification and defense costs in "that suit[.]"  *See, e.g.*, ECF 46-1, at 8 ("Travelers determined that the heparin litigation fell outside the coverage of ACAS's policies . . ."); *Charter Oak*, 2017 WL 3315306, at *6, *12 (referring to "defense or indemnity coverage").  The reservation ends by noting the "further relief" would be sought "in light of the Court's rulings and the jury's verdict in this case."  Because "the Court's rulings" would necessarily concern the duty to defend, the reservation for further relief in light of those rulings extends to defense costs.

Travelers focus on two pieces of the reservation in isolation.  First, they argue that the phrase "once that suit is resolved" is most reasonably interpreted as addressing claims for indemnification in *Allen* because indemnification claims may only be brought after the conclusion of the underlying case, whereas claims for defense costs may be brought while the underlying case remains pending.  But claims for defense costs, too, may be brought once a suit is resolved.  Merely because this language is consistent with indemnification coverage does not mean it is inconsistent with defense coverage.  Additionally, it would be strange for ACAS to reserve only its right to bring an indemnification claim that, at the time of the reservation, had not yet accrued and could not possibly be subject to a *res judicata* defense based on the judgment in the prior coverage case.  Second, Travelers highlight the reservation's use of "any disagreement" and argue it may refer only to a disagreement over indemnification because there could be no disagreement about coverage for defense costs in *Allen* after the judgment in the prior coverage case.  This argument

is remarkable.  Travelers, in this very motion, disagree that they must pay defense costs incurred in *Allen*—indeed, Travelers suggest they must be permitted to relitigate the duty to defend in *Allen* if the Court concludes *res judicata* does not apply.  *See* ECF 51, at 10 n.2.  Beyond this actual disagreement, the parties, at the time they submitted the pretrial order, could have anticipated disagreement over a host of issues.  For example, if the *Allen* complaint were subsequently amended, Travelers could have argued there was no coverage for the amended complaint. Additionally, the parties could have anticipated disagreement over whether certain policy conditions might bar a demand for post-judgment period defense costs, such as a failure to timely provide required documentation or a failure to seek consent before incurring an expense.  *See* ECF 24-4, at 5–6 (letter from Travelers responding to ACAS's request for *Allen* defense costs and identifying these policy conditions).  At the very least, the parties could have anticipated disagreement over the reasonableness of the future *Allen* defense costs.  Ultimately, the Court finds that no reasonably prudent person could read the reservation as extending only to future claims for indemnification coverage in *Allen*.  It is an unambiguous reservation of a right to seek post-judgment *Allen* defense costs.

Travelers cite only *Medina v. Wood River Pipeline Co.*, 809 F.2d 531 (8th Cir. 1987), in support of their argument for ambiguity.  In *Medina*, plaintiff landowners had sought, in a prior action, damages for emotional distress and injury to real property sustained as a result of blasting during the construction of a pipeline.  *Id.* at 532.  Before trial, the parties had settled and stipulated to the dismissal of the complaint with prejudice.  *Id.*  As part of the settlement agreement, the plaintiffs had executed a release to the defendants.  *Id.*  Later, plaintiffs refiled their claims seeking damages for emotional distress and property damage due to the defendants' blasting, arguing the settlement was expressly limited to damages caused by surveyors entering their land and that the

release constituted a contract allowing them to subsequently reassert certain claims.  *Id.* at 533.
The Eighth Circuit rejected this argument and held the purported reservation "in no way indicate[d]
an understanding by the parties that the settlement was a partial one." *Id.* at 534.  To the contrary,
it specifically released "any and all claims for injury or damage . . . resulting from any alleged
trespass on or to" the plaintiffs' property, including "claims for great mental anguish, fear and
emotional distress" and claims for injuring "the usefulness of the land." *Id.*  While the plaintiffs
may have "intended to reach an agreement to allow for the later litigation of certain claims" by
excluding proposed language "that specifically incorporated claims of the kind . . . asserted" in the
second action, the Court concluded the release did not constitute a reservation to overcome *res
judicata*. *Id.*  The purported reservation in *Medina* is not analogous to the reservation here, which
unambiguously extends to the challenged claim.

By joining the proposed pretrial order, failing to object to ACAS's reservation regarding
future relief, and objecting to other forms of relief sought by ACAS, Travelers agreed in effect that
ACAS could file a claim for *Allen* defense costs incurred after the judgment in the prior coverage
case.  ACAS acted on that reservation by filing a claim, Count III of the amended complaint, for
post-judgment period *Allen* defense costs.  Count III falls within an exception to *res judicata*.[11]

---

[11] The Court also rejects Travelers' argument that the reservation lapsed when ACAS did not seek
during trial a declaratory judgment about future defense costs in *Allen*.  The cases Travelers cite
concerned plaintiffs who raised claims in pretrial orders but then failed to raise them at trial,
thereby waiving them. *See Ingram v. Auto Palace, Inc.*, No. BPG-09-2660, 2012 WL 5077633, at
4 n.5 (D. Md. Oct. 17, 2012) (holding plaintiff could not recover damages for a claim identified in
pretrial order but not alleged in the complaint or pursued at trial); *Variety Stores, Inc. v. Walmart
Inc.*, 852 F. App'x 711, 725–26 (4th Cir. 2021) (unpublished) (deeming claim raised in pretrial
order waived where plaintiff asserted no arguments regarding claim at trial).  Here, conversely, the
reservation expressed ACAS's intent to bring its claim for future *Allen* defense costs after *Allen*
concluded, not at the upcoming trial.

**IV.    Conclusion**

Count III of the amended complaint is not barred by the release provision in the parties'

prior unrelated settlement agreement, and it is not precluded by *res judicata*.  The motion to dismiss

is denied.  A separate order follows.

DATED this 8th day of September, 2022.

_____
Deborah L. Boardman
United States District Judge